Hanson *vs.* Brawner.

---

## SAMUEL HANSON, Guardian of MARY E. BRAWNER, *vs.* JAMES L. BRAWNER, Ex'cr of MARY A. McCONCHIE.

Sundry negroes were left, by will of Mary Anne McConchie, to Mary E. C. Brawner, who was still under the age of eighteen years. Is her guardian entitled to the possession of them?

The bequest of the negroes to Mary E. C. Brawner is, "should she attain the age of eighteen years, and on condition that when she comes of age, she release a claim against her father. If she dies under eighteen, they are left to others." A further clause is, "that Lucy H. McConchie shall have a home in the dwelling house of testatrix, also devised to M. E. C. B., and an ample support from the property herein bequeathed to M. E. C. Brawner, and if they separate, in that event a sufficient sum of money be paid to L. H. McConchie annually, from the income of the property devised to M. E. C. Brawner. The slaves to be managed to the best advantage for her during her minority, and the income applied to the support of her and L. H. McConchie. The guardian of M. E. C. Brawner is not entitled to the possession of the negroes."

For the decision of this case, it is not important whether the legacy be vested or contingent. A legacy may be vested, and still the legatee be not entitled to it till a future period.

The language of this bequest, "should she attain the age of eighteen years," clearly manifests an intention to postpone the possession until that time, and that intention is confirmed by the clause which gives the slaves to others, if the legatee should die under age.

It was the duty of the executor to retain the slaves, in order to carry into effect the intent of the testatrix, no such power or authority having been given to any one else.

THIS appeal was taken from a decree of the orphans court of Charles county.

In this case the appellant filed a petition in the orphans court of Charles county, representing himself to be the duly qualified guardian of Mary E. C. Brawner, and, in that capacity, claiming possession of certain property which had been bequeathed to his ward by the will of Mary A. McConchie, set out at length as an exhibit to the petition, and alleged to be in the hands of the appellee, as surviving executor of the testatrix, and praying for an order to said executor to deliver over the property to his possession.

The executor, the appellee, answered the petition, claiming, in his testamentary capacity, to retain possession of the property, until the legatee attained the age of eighteen years, and resting his claim upon the construction of the will aforesaid. The orphans court dismissed the appellant's petition, and ordering the appellee, as executor, to retain possession until the contingency happen, by which the said property shall become vested.

The will of Mary A. McConchie is dated 10th November 1843, and contains the following bequest:

"Item.—I give and bequeath unto the said Mary Elizabeth Charlotte Brawner, should she attain the age of eighteen years, the following slaves, viz: John Wallace, Joe Wallace, Ferdinand, Joe Diggs, Cloe, Letty, Mary, Sarah Ann, Tophy, Emily and Harriet Ann; I give the said lands and slaves to the said Mary Elizabeth Charlotte Brawner, on condition that she shall, when she arrives at lawful age, release unto her father, William Henry Brawner, his heirs or assigns, whatever land, money, or other property she may have inherited or be entitled to from her mother, Mary E. Brawner."

The case was argued before LE GRAND, C. J., ECCLESTON and MASON, J.

By *Reeder* for the appellant, and *Frederick D. Stone* and *Worthington* for the appellee.

*Reeder* for appellant.

1st. It seems to me that an executor cannot be treated as a trustee under a will, unless by express appointment, which does not exist in this case; and if there is a trust, either express or implied, created by the will, it exists in the infant, Mary Elizabeth Charlotte Brawner, by virtue of the recommendatory or precatory words of the clause before the last in favor of Lucy H. McConchie. This recommendatory or precatory language, creates a lien in favor of Lucy H. McConchie for a support upon the property of the infant, whether it remains in the hands of the executor or passes into the hands of the guardian. It seems to me, this is the only trust under this will. In support of these views, see *Hill on Trustees, pp.* 63, 64, 65; and see, also, *Tolson vs. Tolson,* 10 *Gill and Johnson, p.* 159. Where there was a devise of property to sons, and recommendatory or precatory words in favor of their brother, to the extent of a support.

2nd. But it seems by the answer of the appellee, that the executor relies upon the contingency mentioned in the clause already quoted. This, I apprehend, is error. If the court will look at the law in reference to the happening of contingencies, on page 105 of *Dorsey's Testamentary Law,* it can hardly be construed to apply to this case. The contingency ought to be such a one as is to be executed by the executor. It must be a duty or power, by the express language of the will. The language of the law is this: "If by the provisions in a will, it shall be necessary for an executor, or for an administrator, with a copy of the will annexed, to retain in his hands the personal estate, or a part thereof, after all just claims are discharged; as where money, or some other thing, is directed to be paid at a distant period, or upon a contingency." It seems to me, this language is conclusive of the view I entertain of this subject—that it must be a duty "directed" by the testatrix, to be specifically executed by the

executor. It must be a power given, and required to be performed; and if the testatrix had said that the executor should retain, until the happening of the contingency, and then pay over, there would have been no doubt. The language of the law is, "if by the provisions" it is "necessary," and the thing is "directed to be done. Is either the retention or payment over of the property here "directed?" Such a power here is not express, and cannot be deduced from the language of the will by implication.

3rd. But I hold, in opposition to the view taken by the appellee and sanctioned by the decree of the orphans court, that it is not competent for a testator or testatrix, to oust the orphans court of its jurisdiction over the person and property of minors, by a testamentary provision. It would place it entirely in the power of private citizens to change and commute our testamentary system, by substituting private arrangements and wishes, in the place of the settled law of the land and the jurisdiction of the orphans court, as established by law. By the law, as found on page 16th of *Dorsey's Testamentary Law*, the orphans court are bound to the strict exercise of the powers granted, and can exercise none other. Where is the power to retain an executor, for the control of the person and property of an infant, longer than he can act as guardian, until debts and legacies are paid and the estate settled, in due course of administration. On page 112 of *Dorsey's Testamentary Law*, it is required that the orphans court shall appoint a guardian where one does not exist; and from that page to page 122 of the same work, it will be found that the sole control of the person and property of the minor, is given to the orphans court; and shall a private citizen, by a devise, destroy this?—make the law and tribunal null and of none effect? Can there be two officers to manage the property, the executor and guardian, and each receive ten per cent.? If the income should be three hundred dollars at     per cent. commission, it would be reduced to two hundred and thirty. But there is not even any provision in this will "directing" the executor to retain and pay over. Could a testator deprive

his executor of a commission? And if not, how can he deprive the orphans court of its jurisdiction over the person and property of minors?

*Stone* for appellee.

The appellee contends:

1st. That the orphans court has no authority or power to order the property in question to be delivered to the guardian, as such, and that the law has provided a different disposition of legacies, subject to the limitations and contingencies to which these legacies are subject, which the orphans court must pursue.

2nd. That the bequests of the property in question, is not such as entitles the legatee or her guardian to possession, being contingent upon two or three events; upon the occurrence only of one, at least, the interest becomes so far vested, as to justify the executor to part with it, or the orphans court to order it to be delivered.

3rd. That the joint interest of Lucy McConchie, in the profits of the property for life, is inconsistent with the right of possession and control by the guardian of Mary E. C. Brawner. Upon the first point, the appellee referred to the act of 1798, ch. 101, sub ch. 10, sec. 11; sub ch. 12, sec. 1. 2 *Bl. Rep.*, 288. *Broadess vs. Thompson*, 2 *Harr. & Gill*, 121. 1 *Story Eq.*, 603. *Wms. on Ex'trs*, 638.

Upon the second point, the following authorities were cited: *Spence vs. Robins*, 6 *Gill & John.*, 507. *Lemounier vs. Godfrord's Adm'rs*, 6 *H. & J.*, 472. *1st Jarman on Will*, 619, *(top page.) Ib.*, 641. *Jackson vs. Waine*, 7 *Wendall*, 47. See *Balchtier vs. Leach*, 5 *Bevans*, 392. 1 *Jarman*, 645, '6. 2 *Wms. on Ex'trs*, 1001, 1005, 996, 1013, '4. 11 *Pickering*, 503. 2 *Wms. on Ex'trs*, 881, 886, 889.

*Worthington* on the same side.

"Should she attain the age of eighteen years." This must refer to the possession or the title. Such legacy is either

vested or contingent.   If vested, it must refer to the time of possession.

Appellant must contend, that it is a contingent legacy, the possession to go to her immediately.   He cited 2 *Wms. on Ex'crs*, 904, 881, 886.   1 *Jerman on Wills*, *(ed.* 1841,) 646. 6 *G. & J.*, 515.   6 *H. & J.*, 472.

The title has not vested, can she or her guardian claim the possession?   2 *Wms.*, 904, 918.   2 *Bland*, 288.   11 *Pick.*, 503.

In this case another, by a different clause of the will, is to divide the profits, and surely then the guardian of the first legatee cannot be entitled to the possession.   He cannot charge himself with the profits to which another is entitled. See act of 1798, sub ch. 12, secs. 1 and 5.   Sub ch. 10, sec. 11.

In this case the legacy is contingent, and until she arrives at eighteen, she cannot claim the property.   The executor must retain it until the event occurs.

*Reeder* in conclusion.

The appellants have contended in this case, that it is the imperative duty of the orphans court to appoint a guardian to a minor where there is not one appointed by the will, and that it is not competent for a private citizen, by last will and testament, to oust the court of this jurisdiction, and to appoint another officer, and establish another mode of managing the property, in lieu of that which the acts have prescribed.   For this purpose the various acts, to be found in *Dorsey's Testamentary Laws*, from page 112, to page 122, have been referred to.

In the *2nd volume of Gill, page* 241, in the case of *Compton vs. Compton*, it was decided, that the appointment of guardian was wholly in the discretion of the court.   It was imperative to appoint, but the person selected was the subject of discretion.

But, in the case of *McKim and Marriott, vs. Duncan*, in the *4th Gill, page* 72, there is a still stronger interpretation of

our testamentary system, and of the powers of the court under that system, in favor of the view taken by the appellants, than in the case in the 2nd Gill, just cited. In that case it is decided, that although a testator provides, by a clause in his will, that his executor shall have no commission, yet the court will give it to him, on the ground that such a provision would be a repeal of the law which gives to executors their commission; an executor being an officer of the law, and as such, entitled to his compensation.

The appellants contend, that the appointment of a guardian is as imperative a duty to be performed by the orphans court, as the grant of a commission to an executor, and that it is a duty, a legal duty, to be performed by the court, irrespective of any wish of a private citizen. The control of the person and property of a minor, is a superadded jurisdiction, imperative in its character, and not to be disregarded, and different from a case where an adult is concerned alone. In the case of an adult, the court directs and advises the executor or administrator, and there is no jurisdiction beyond that; but where a minor is concerned, the executor or administrator is quasi guardian for a certain period, and then the superadded jurisdiction of appointing a guardian must be exercised, imperatively exercised by the court.

The appellants have contended, and it will not be denied, but that the orphans court can exercise only such powers as have been conferred. If an act of Assembly does not authorise an executor to manage a minor and its property, the power cannot be exercised, because to so exercise it, as we have said, would be wholly at war with our testamentary system, which requires the appointment of a guardian.

There is but one act which could be considered as being, in manner, applicable to this case. That act is to be found on page 105 of Dorsey's Testamentary Laws. That act says, that where an executor or administrator, with the will annexed, by the provisions of the will is directed to pay any money, or any other thing, upon the happening of a future event or a contingency, the orphans court, or court of chancery, shall

Hanson *vs.* Brawner.

so order, that is, order according to the directions of the will. Powers which are granted, can alone be exercised, and this act does not name minors, so as to take them out of the force of other acts which require guardians to be appointed, and the orphans court to take control of minors and their property. When this act is presented me as authority, I say it can refer only to adults, because minors are not named, and here are acts which name minors, and require that the court shall appoint a guardian, and control their person and property.

The language of the act is, that if by the provisions of the will, money or any other thing is directed to be paid, this act can only apply where there are specific requirements by the provisions of the will, for it is said that the executor or administrator is directed to pay.

But the appellants think it is clear, from the language of this act, that it can only embrace cases where the property is not to be enjoyed during the retention, and in this case, by the last clause in the will, the minor has the right to enjoy the property, and how then can the executor retain?

I come now to speak of the grounds on which the orphans court have based their decree. In that decree it is said, the property is to be retained by the executor until the contingency happens, and the property vests.

There are two contingencies in the will: one if she dies in her minority, and the other if she refuses to take after she attains the age of eighteen. If either of these happens, the property goes to others absolutely, and the minor herself has the use of the property during her minority, by the last clause in the will. Does not this constitute a vested right? Would not a life estate be a vested right? In *Bouvier's Law Dictionary, page* 625, under the title to vest estates, it is said, "to vest an estate, is to give an immediate prior right of present or future enjoyment; an estate is vested in possession when there exists a right of present enjoyment." The last clause of the will gives the right of enjoyment to the minor, during her minority, and this fact, of itself, is enough to de-

13   v. 2

stroy the doctrine, that the executor can retain; for, it seems to ·me, the right to retain must be against the right of enjoyment.

Eccleston, J., delivered the opinion of the court.

The appellant filed a petition in the orphans court of Charles ·county, claiming the right to have certain negroes delivered to him by the appellee. The negroes in controversy, are those named in the will of Mary Ann McConchie, as given to Mary E. C. Brawner, who is a minor under eighteen years ·of age. The question for our consideration is, whether the will gives her such an interest in the negroes, as that her guardian is entitled to the possession of them at this time?

· The first item of the will gives to Mary E. C. Brawner all the real estate, to her, and her heirs and assigns, forever: but, in the event of her death during minority, and without leaving children, then the same is given to Mary Elizabeth Brawner, and her heirs and assigns.

The second item is in the following words: "I give and bequeath unto the said Mary Elizabeth Charlotte Brawner, should she attain the age of eighteen years, the following slaves, viz: John Wallace, Joe Wallace, Ferdinand, Joe Digges, Cloe, Letty, Mary, Sarah Ann, Sophy, Emily and Harriett Ann; I give the said lands and slaves to the said Mary Elizabeth Charlotte Brawner, on condition that she shall, when she arrives at lawful age, release unto her father, William Henry Brawner, or his heirs or assigns, whatever land, money, or other property she may have inherited or be entitled to from her mother, Mary E. Brawner. I also give and bequeath to the said Mary Elizabeth Charlotte Brawner, my hexigon quilt and two white counterpanes."

The third item provides, that in the event of Mary E. C. Brawner's death under eighteen years of age, the said slaves, except Emily, shall be equally divided between John James Brawner, Ellen Speake Brawner, Alice Orinthia Brawner, Mary Elizabeth Brawner, Catharine Mariamny Brawner, Henry Alexander Brawner, and Thomas McConchie Brawner.

The fourth item, in case Mary E. C. Brawner shall die

under eighteen years of age, gives to Eliza M. Hanson and Emily Speake, each, one hundred dollars, to be received by them from the personal property before bequeathed to Mary E. C. Brawner; and negro Emily is given to Emily Speake.

The sixth item gives to Mary Elizabeth Brawner and Thomas McConchie Brawner, a negro woman named Jenny, and her children, naming them; and then provides: "But as I have bequeathed my real estate to Mary Elizabeth Brawner, in the event of the death of Mary Elizabeth Charlotte Brawner during her minority, in that event it is my will, that her share of the slaves contained in the above bequest, shall be relinquished by her and included among the slaves left by said Mary Elizabeth Charlotte Brawner, and divided equally among those legatees named in the third item in this my will."

The fifth, seventh and eighth items bequeath small legacies, having no connection with this contest.

The ninth item is: "I give and bequeath Mary Elizabeth Charlotte Brawner, all the residue of my estate, after my debts and funeral expenses are paid by my executors hereafter named."

The tenth item is: "It is my will, that Lucy H. McConchie have a home in my present dwelling house, and an ample support from the property hereinbefore bequeathed to Mary Elizabeth Charlotte Brawner, and it is my desire that they shall remain together; but should anything occur to make it necessary for her to leave the premises, it is my will, in such event, that a sufficient sum of money shall be paid her annually during her life, from the income of the property hereinbefore devised to Mary Elizabeth Charlotte Brawner; and it is my will and desire, that all the slaves and other property hereinbefore devised to Mary Elizabeth Charlotte Brawner, shall be managed to the best advantage for her during her minority, and the income be applied to the support of her and Lucy H. McConchie."

The appellee and James Brawner, who is now dead, were appointed executors. This proceeding is therefore against

the appellee as surviving executor. In his answer he admits the possession of most of the negroes mentioned in the second clause of the will, but insists that he is bound to retain them until Mary E. C. Brawner arrives at the age of eighteen years.

It has been said, in behalf of the appellant, that this legacy is not contingent but vested, and therefore the guardian had a right to the possession. On the other side it is said to be contingent, and cannot vest until the legatee is eighteen years of age; and for this reason the executor cannot be required to deliver over the slaves until that time; more especially so, as the hire, in the meanwhile, is to be applied to the joint support of the minor and Lucy H. McConchie. But for the decision of this case, it is not important whether the legacy is vested or contingent.

A legacy may be vested, and still the legatee may not be entitled to demand it until a future period. In regard to the time of payment, the controlling principle in the construction of wills, that the intention of the testator must govern, is equally applicable as on any other point. *Ward on Legacies,* in 18 *Law Lib.,* 148, shows, that the testator's intention on this subject, "will of course be followed as near as possible." In this connection he refers to a case in which legacies were given to grandchildren, to be paid at twenty-one or marriage, and in a subsequent clause of the will, the testator appointed *all the legacies thereby devised* to be paid within one year after his death. It was held, that the last clause only related to the other legacies given in the will, so as not to contradict the time specially appointed for payment of those to the grandchildren.

In 2 *Wms. on Ex'crs,* 1003, *ch.* 4, *sec.* 4, the 2nd *Am. Ed.,* it is said: "Although legatees are not entitled in any case to receive their legacies before the day of payment arrives, yet they are entitled to go into chancery, and pray that a sufficient sum be set apart to answer the legacy when it shall become due."

In *Cowden vs. Perry,* 11 *Pick.,* 503, in deciding whether a legacy was rightfully paid by the executors to the legatees,

before attaining their full age, the court thought it unnecessary to decide whether the legacy was contingent or vested; because, if vested, it was defeasible, upon the death of the legatee under age. They remark, on page 508: "It would perhaps be a little more accurate to say in this case, that the legacy was vested, but determinable upon a condition, that on the happening of those events which rendered it absolute and indefeasible, the legacy was payable."

In 3 *Porter's Alaba. R.*, 350, *Christian vs. Christian,* the testator gave to his grandson, an equal dividend of sundry slaves, with nine children, who are named in the will; "to be equally divided, when James A. Christian arrives at the age of twenty-one years." The enjoyment of the specific property, was held to be postponed, until J. A. Christian, who was one of the legatees, became of age. But the hire was allowed, from the death of the testator. The will made no express provision in regard to hire.

In *Graybill and Butts vs. Warran,* 4 *Georgia R.*, 538, whilst discussing the subject of hire, the court express the opinion, that the property in the negro bequeathed, "vested absolutely" in the legatee. The possession, however, was considered postponed, until the legatee arrived at twenty-one, the period mentioned in the will. Here, as in *Christian vs. Christian,* the will was silent on the subject of hire, and the court gave it to the legatee.

In the case before us, the bequest to M. E. C. Brawner is, "should she attain the age of eighteen years." This language, clearly manifests an intention to postpone the possession until that time. And such intention is not in any degree changed or altered, but rather confirmed by the clause, which gives the slaves to others, if the legatee should die under age.

According to the notes, filed by the counsel for the appellant, he conceives, that the last or tenth clause of the will, gives to the minor, the use of the property during her minority; which constitutes a vested right. That under this clause, she has the right of enjoyment, and therefore, the executor has no authority to retain the property.

It is true, that in many cases where a legacy, which might not otherwise be vested, may become so by a gift of the interest or profit; but then it does not always follow, that the legatee can claim the principal, immediately. And where the giving of interest creates a vested right in the legacy, it requires a bequest of the whole interest; part will not have that effect. At least, such is the general rule. 2 *Wms. on Exc'rs*, 775, *ed. of* 1832. 1 *Jarman on Wills, marg. p.*, 766. *Lemonier vs. Godfroid's Adm'rs*, 6 *H. & J.*, 474.

Here the income is to be applied to the support of the legatee and another. If, therefore, it would be any advantage to the appellant, to show this to be a vested legacy, the gift of income, can avail him nothing, because his ward is only entitled to one-half of it during minority. This is not a bequest of the slaves, with a request or direction to the legatee, to support another person out of the same, so as to create merely a lien thereon, as has been suggested. But after they are given, should the legatee attain a certain age, without a word on the subject of income or hire, a subsequent clause directs the slaves to be managed to the best advantage for the legatee, during minority; and then, in disposing of the income, gives precisely the same interest therein to L. H. McConchie, which it does to M. E. C. Brawner.

After a careful examination of the will, we think it was the intention of the testatrix, that the legatee should have the negroes, when she arrived at the age of eighteen, and not before. If so, and the income has been disposed of or appropriated, as stated, it was the duty of the executor to retain the slaves, for the purpose of carrying into effect the provisions of the will; no such power or authority having been given to any one else, either expressly or by implication.

In *Evans vs. Iglehart*, 6 *G. & J.*, 171, the testator gave the residue of his personal estate to his wife for life; and after her decease, one-half to be equally divided between the children of two persons, named in the will; the remaining half, to go as his wife might direct by will. The English doctrine, that in such a case it is the duty of the executor to convert

the whole residuum into money, and invest the amount in some secure fund, that the tenant for life might receive the dividends, until, upon her death, the whole might vest in those entitled in remainder; the court decide not to be the law of Maryland.   On the contrary, it is held, that the tenant for life has a right to the possession of the specific articles of property, constituting the residue.   But in this there are some exceptions.   On pages 196 and 197, the learned judge says: " If the surplus or residue thus bequeathed, consists of money or property, whose use is the conversion into money, and which it could not for that reason be intended, should be specifically enjoyed nor consumed in the use, but be by the executor converted into money for the benefit of the estate; as for example, a quantity of merchandize, a crop of tobacco, or the like, an investment thereof must be made by the executor, in some safe and productive fund, or it must be put out on adequate securities, and most properly under the authority and direction of the orphans court, or a court of equity, so as to secure the dividends, interest, or income, to the legatee, for life, and the principal after his death, to the legatee in remainder."   Thus, where the principal is payable in future, and the interest or income appropriated to present use, the authority of the executor to control and invest the fund is recognised. And in the case then before the court, there was no such authority or power expressly given to the executors, in the will. This case, therefore, is in opposition to the position contended for by the counsel for the appellant, that the appellee has no right to hold the slaves, because the will gives him no such power expressly; and he can have none by implication.

This is not an application to a court of chancery, asking for the appointment of a trustee, and the transfer of the property to him by the executor, on account of any apprehension of loss, arising from neglect of duty on his part, or for any other reason; but the petition prays for a decree from the orphans court, to compel the executor to account, and pay over the property to the petitioner, as guardian of M. E. C. Brawner.   Considering him not entitled to the possession of

the slaves at this time, we must affirm the decree of the orphans court dismissing the petition.     In this affirmance, we wish to be understood as deeming it unnecessary to notice any portion of the decree, except that by which the petition is dismissed.   So far as this case is concerned, it is not important to inquire, whether the appellee will hold the slaves in the character of *executor*, or that of a *trustee*.

An account is asked for of all the property which came into the possession of the executor, and all receipts and disbursements; but the answer makes no mention of any personal property, except the negroes, included in the second clause of the will.   It denies that the executor had possession of any real estate.   The decree takes no notice of any species of property, except the negroes mentioned in the answer.   And the argument in this court has been confined exclusively to the same negroes.   Our decision, therefore, is to be considered as having reference to them alone.

*Decree affirmed.*